**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHRISTINE A. NEITZ, | CASE NO. 3:13-cv-02557-CCC-GBC |
| Plaintiff, | (CHIEF JUDGE CONNER) |
| v. | (MAGISTRATE JUDGE COHN) |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | REPORT AND RECOMMENDATION TO VACATE THE DECISION OF THE COMMISSIONER AND REMAND FOR FURTHER PROCEEDINGS |
| Defendant. | |
| | Docs. 1, 7, 8, 14, 19, 26 |

## REPORT AND RECOMMENDATION

### I.    Introduction

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying the application of Plaintiff Christine A. Neitz  for supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. §§401-433, 1382-1383 (the "Act"). Plaintiff alleges disability as a result of Crohn's disease, deep vein thrombosis, and other physical impairments. Plaintiff's treating physician submitted multiple opinions that she was disabled. The administrative law judge ("ALJ") in this case credited the opinion of a consultative examiner over the opinions of Plaintiff's treating physician. However, the Third Circuit has a well-established preference for

treating physicians. An ALJ may reject the opinion of a treating physician in favor of an examining physician who has never treated a claimant, but not for the wrong reason. For instance, Social Security rules prohibit an ALJ from rejecting an opinion from a treating physician because it is on an issue reserved to the Commissioner when the bases for the opinion  are not clear unless the ALJ makes every reasonable effort to recontact the treating physician. Here, the ALJ rejected the treating opinion because it  was on an issue reserved to the Commissioner and did not provide any basis for its findings. The record does not indicate any attempt to recontact the treating physician. Thus, the ALJ rejected this opinion for the "wrong reason." Given the preference for treating physicians, the Court cannot conclude that the ALJ's findings are supported by substantial evidence. As a result, the Court recommends that Plaintiff's appeal be granted, the decision of the Commissioner be vacated, and the matter be remanded for further proceedings.

## II.    Procedural Background

On May 10, 2010, Plaintiff  filed an application for SSI under the Act. (Tr. 213-19). On November 17, 2010, the Bureau of Disability Determination denied this application (Tr. 175-176), and Plaintiff filed a request for a hearing on January 21, 2011. (Tr. 205-07). On December 14, 2011 an ALJ held a hearing at which Plaintiff—who was represented by an attorney—and a vocational expert ("VE") appeared and testified. (Tr. 146-74).  On January 12, 2012, the ALJ found that

Plaintiff was not disabled and not entitled to benefits. (Tr. 177-95).  On February 7, 2012, Plaintiff filed a request for review with the Appeals Council (Tr. 146-74), which the Appeals Council denied on August 14, 2013, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr. 1-5).

On October 14, 2013, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal the decision of the Commissioner. (Doc. 1). On December 27, 2013, the Commissioner filed an answer and administrative transcript of proceedings. (Docs. 7, 8). On April 11, 2014, Plaintiff filed a brief in support of her appeal ("Pl. Brief"). (Doc. 14). On April 30, 2014, the Court referred this case to the undersigned Magistrate Judge. On June 13, 2014, Defendant filed a brief in response ("Def. Brief"). (Doc. 19). On September 26, 2014, Plaintiff filed  a brief in reply. (Doc. 26). The matter is now ripe for review.

### III.    Standard of Review

When reviewing the denial of disability benefits, the Court must determine whether substantial evidence supports the denial. *Johnson v. Commissioner of Social Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)

(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is "less than a preponderance" and requires only "more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

## IV.    Sequential Evaluation Process

To receive disability or supplemental security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The Act requires that a claimant for disability benefits show that he has a physical or mental impairment of such a severity that:

> He is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step evaluation process to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520; *see also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does

not proceed. *See* 20 C.F.R. § 404.1520.   The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"); (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. §§ 404.1520, 416.920. Before moving on to step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC").   20 C.F.R. §§ 404.1520(e), 416.920(e).

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four.   If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability within the meaning of the Act lies with the claimant. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

### V. Relevant Facts in the Record

Plaintiff was born on July 27, 1969 and was classified by the regulations as a younger individual through the date of the ALJ decision. 20 C.F.R. § 404.1563.

(Tr. 190). Plaintiff has at least a high school education and no past relevant work. (Tr. 190).

Plaintiff was diagnosed with Crohn's disease and enteritis of her small intestine several years prior to her alleged onset date (Tr. 187). She was hospitalized prior to 2010 for medical conditions and symptoms related to Crohn's disease and enteritis, including nausea, vomiting, abdominal pain, extremity weakness and numbness, and fatigue, and she was treated with various medications and vitamin supplements, as well as a small intestine resection and periodic Remicade injections (Tr. 187, 262-408).

On November 19, 2009, Plaintiff saw her primary care physician, Dr. Charles Manganiello, M.D., for "all of her same problems as in the past," specifically "Crohn's disease with mal absorption and vitamin deficiency along with magnesium, potassium and zinc deficiency." (Tr. 507). She was "doing better with her vitamin replacement. When she has to take over the counter medications, she can't afford them. As a result, she will have some depressed numbers." (Tr. 507). She was stable and Dr. Manganiello continued her medications. (Tr. 507).

On January 5, 2010, Plaintiff followed-up with her gastroenterologist, Dr. Thomas Castellano, M.D. (Tr. 506). Plaintiff had been on Remicade since December of 2008. (Tr. 506). Plaintiff "was to have colon done but did not show. Has not been compliant in ov, labs, colon." (Tr. 506). Plaintiff explained that she

was not getting messages regarding the above because she had separated from her boyfriend. (Tr. 506). Dr. Castellano noted that "compliance has been a major issue and I told Christina that if she has any more issues with noncompliance she will be discharged from practice." (Tr. 506).

On March 16, 2010, Plaintiff followed-up with Dr. Manganiello. (Tr. 505). She was "somewhat noncompliant with meds due to cost." (Tr. 505). Plaintiff had cartilage issues and crepitus in her knees. (Tr. 505). Plaintiff reported "intermittent problems with her bowel, that have stabilized to a certain degree on treatment program." (Tr. 505). Dr. Manganiello could not "palpate any discernable abnormalities" in her abdomen, although there was "some tenderness throughout." (Tr. 505). He noted that there was "not much to change" and continued her medications. (Tr. 505).

On July 13, 2010, Plaintiff followed-up with Dr. Manganiello. (Tr. 998). Plaintiff had tenderness throughout her abdomen, decreased bowel sounds, and "some deformity of the left knee." (Tr. 998). Plaintiff reported:

> She is having problems regarding her medications. Her insurance is stating her zinc, magnesium and potassium can be had over-the-counter, As a result of the same I am not sure because of cost if she is taking her meds. She is feeling weak and tired., She is having pain in her knee in the medial component. She continues to have problems related to her GI issues. In any event she has deficits, pain and her ongoing problems without improvement.

(Tr. 998). He referred her to a psychologist for major depression, prescribed voltaren gel for her knee, and continued her other medications. (Tr. 998).

In August and September of 2010, Plaintiff was hospitalized three times for complications of deep vein thrombosis, with swelling, echymosis, and an infection in her catheter (Tr. 726-815). She was admitted for three to five days each time. *Id.*

On October 6, 2010, Plaintiff had a consultative examination with Dr. John Citti, M.D. Plaintiff reported that she had three to six bowel movements per day, which were rarely bloody and were "not usually a problem for her" (Tr. 816). On examination, Plaintiff had tenderness over her Achilles tendons, and reported pain with lifting her arms overhead with limited range of motion on abduction, and limitation of internal and external shoulder rotation.(Tr. 818, 834-827). She reported feeling dizzy when getting up from a squatting position. (Tr. 826). Dr. Citti opined that Plaintiff could occasionally lift and carry up to 20 pounds, and frequently lift and carry 2 to 3 pounds (Tr. 825-827). Dr. Citti stated that Plaintiff was capable of sitting, standing and walking six hours in an eight-hour day. (Tr. 825-827).

On October 8, 2010, Plaintiff followed-up with Dr. Manganiello. (Tr. 906). Plaintiff's catheter had been removed. (Tr. 906). She had some "persistent swelling in the right arm and right breast." (Tr. 906). She was on Coumadin. (Tr. 906). The wounds on her chest were more stable. (Tr. 906). Dr. Manganiello noted that "for

the most part, she is much more stable" but "remain[ed] on disability status." (Tr. 906).

On October 19, 2010, Plaintiff followed-up with Dr. Castellano. (Tr. 866). Plaintiff reported occasional abdominal pain and bowel symptoms, "worse last 2 wks before Remicade." (Tr. 866). Plaintiff reported four to five mushy bowel movements daily with no blood. (Tr. 866). He noted that Plaintiff had been "intermittently noncompliant." (Tr. 866). On examination, Plaintiff had a soft and tender abdomen. (Tr. 866). He increased her Remicade to every six weeks. (Tr. 866).

On August 18, 2011, Plaintiff followed-up with Dr. Castellano. (Tr. 873-75). She was having two bowl movements daily with no blood and reported swelling in both arms with weight gain. *Id.* Her enteritis was assessed to be in remission, and her deep vein thrombosis was assessed to be in "possible recurrence." (Tr. 873). On August 19, 2011, an ultrasound indicated "chronic deep vein thrombosis seen in" multiple veins and "occlusive deep venous thrombosis in one of the left brachial veins which is a new finding." (Tr. 876).

On October 5, 2011, Dr. Manganiello completed a Medical Assessment form for the Commonwealth of Pennsylvania. (Tr. 853).He opined that Plaintiff had been "permanently disabled" since January 1, 1995. (Tr. 854). He cited Plaintiff's

Crohn's disease and central vein occlusion and indicated that Plaintiff was "following the prescribed treatment plan." (Tr. 854-55).

On October 7, 2011, Dr. Manganiello sent Plaintiff a letter that stated:

Due to your multiple and significant medical problems and my concerns with regards to your health, I feel it is necessary to notify you formally that compliance with your medical therapies, follow up, and studies is imperative and of utmost importance. I have discussed this with you multiple times in the past and to date, you have not been compliant with my recommendations.

Unfortunately, if your non compliance continues, I will have no choice but to terminate you from my practice.

(Tr. 1038).

On November 8, 2011, Plaintiff followed-up with Dr. Manganiello. (Tr. 1026). He noted "active Crohn's disease and issues related to the same" and "chronic central venous occlusion." (Tr. 1026). He indicated that "her problems remain the same in terms of swelling of her arm, chest throughout. For the most part, I cannot appreciate any of those findings on exam." (Tr. 1026). On examination, he noted she did "not have any of the increased edema that she had before. I believe most of her changes are related to some increased adipose tissue." (Tr. 1026). He increased her Coumadin and continued her disability status. (Tr. 1026).

On December 14, 2011, Plaintiff appeared and testified at a hearing before the ALJ. (Tr. 146). She alleged that, although she had the lifting and other abilities

to often perform daily activities, her Crohn's disease frequently arises at unexpected times, requiring unscheduled bathroom breaks. (Tr. 146-62). She reported that her children do much of the chores and that had uncontrolled bowel movements at night once or twice a month. (Tr. 162).

On January 12, 2012, the ALJ issued the decision. (Tr. 182). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 28, 2010, the application date. (Tr. 182). At step two, the ALJ found that Plaintiff's Crohn's Disease; enteritis of the small intestine; and deep vein thrombosis (DVT) were medically determinable and severe. (Tr. 182). At step three, the ALJ determined that, as of Plaintiff's date last insured, he did not meet or equal a Listing. (Tr. 185). The ALJ found that Plaintiff had the RFC:

> [T]o perform light work as defined in 20 CFR 416.967(b) involving lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. The claimant is limited to occasional pushing and pulling with the upper extremities, bending, stooping, crouching, kneeling, balancing and climbing, but never on ladders, ropes or scaffolds. The claimant would not be able to perform any overhead reaching with the upper extremities. The claimant would need to avoid concentrated exposure to hazards, such as moving machinery and unprotected heights. The claimant is limited to a low stress work environment, defined as occasional decision-making and occasional changes in the work setting. The claimant is limited to simple, routine tasks and would not be able to do any detailed or complex tasks.

(Tr. 186). At step four the ALJ found that Plaintiff had no past relevant work. (Tr. 190). At step five, the ALJ found that Plaintiff could perform other work in the

national economy pursuant to testimony from a vocational expert. (Tr. 190-91).

Consequently, the ALJ found that Plaintiff was not disabled and not entitled to

benefits. (Tr. 190).

## VI.      Plaintiff Allegations of Error

### A.      Assignment of weight to the medical opinions

Plaintiff asserts that the ALJ's RFC assessment lack substantial evidence

because the ALJ improperly rejected the opinion of her treating physician, Dr.

Manganiello. The ALJ rejected Dr. Manganiello's opinion because:

> Although it is consistent with his opinion in the medical records
> which predate the claimant's current disability application filing date,
> it does not address any specific functional limitations and is quite
> conclusive without offering any specificity concerning the degree of
> the claimant's impairments. Furthermore, with regard to the
> employability assessment form, it is given little weight. It is a
> standard and very common practice for a treating physician to
> support and accommodate a patient's application for public assistance
> with the completion and execution of these forms. Claimants require
> these forms to access public welfare benefits, including health
> insurance. As such, physicians have  both an altruistic and financial
> interest in aiding their patients. These forms do not require the
> doctors to justify their opinions through objective medical findings,
> diagnostic test results or other competent evidence. Finally, as with
> all opinions rendered as to a claimant's status as "disabled", this issue
> is clearly reserved to the Commissioner (Social Security Ruling 96-
> 5p).

(Tr. 189).

An ALJ must weigh medical opinions in making an RFC assessment. The

social security regulations state that when the opinion of a treating physician is

"well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," it is to be given controlling weight. 20 C.F.R. § 416.927(d)(2).  Section 404.1527(c) establishes the factors to be considered by the ALJ when the opinion of a treating physician is not given controlling weight. Under subsections (c)(1) and (c)(2), the opinions of treating physicians are given greater weight than opinions of non-treating physicians and opinions of examining physicians are given greater weight than opinions of non-examining physicians, as discussed above. Section 404.1527(c)(2) also differentiates among treating relationships based on the length of the treating relationship and the nature and extent of the treating relationship. Subsection 404.1527(c)(3) provides more weight to opinions that are well supported, which means that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." Subsection 404.1527(c)(4) states that "the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." Subsection 404.1527(c)(5) provides more weight to specialists, and subsection 404.1527(c)(6) allows consideration of other factors which "tend to support or contradict the opinion."

In *Morales v. Apfel*, 225 F.3d 310 (3d Cir. 2000), the Third Circuit set forth

the standard for evaluating the opinion of a treating physician, stating that:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer [v. Apfel*, 186 F.3d 422, 429 (3d Cir.1999)] (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)); *see also Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir.1994); *Jones,* 954 F.2d at 128; *Allen v. Bowen*, 881 F.2d 37, 40-41 (3d Cir.1989); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Brewster*, 786 F.2d at 585. The ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Plummer,* 186 F.3d at 429 (citing *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir.1993)). The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. See *Adorno*, 40 F.3d at 48. In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. *Plummer*, 186 F.3d at 429; *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Kent*, 710 F.2d at 115.

*Id.* at 317-318.

The ALJ must provide "good reasons" to reject treating source opinions. 20

C.F.R. 404.1527(c)(2). states that ALJs "will *always give good reasons* in [the]

*notice of determination or decision* for the weight we give your treating

physician's opinion." *Id*. (emphasis added). *See also Ray v. Colvin*, 1:13-CV-0073,

2014 WL 1371585, at *21 (M.D. Pa. Apr. 8, 2014) ("The cursory manner in which

the ALJ rejected Dr. Jacob's opinions runs afoul of the regulation's requirement to

" give good reasons" for not crediting the opinion of a treating source upon

consideration of the factors listed above. While there may be sufficient evidence in the record to support the ALJ's ultimate decision that Plaintiff was not under a disability, and, thus, the same outcome may result from remand, the court cannot excuse the denial of a mandatory procedural protection on this basis.").

Additionally, when a treating source issues an opinion on an issue reserved to the Commissioner, the ALJ is generally obligated to recontact the treating physician:

> Nevertheless, our rules provide that adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner. For treating sources, the rules also require that we make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us.

SSR 96-5p.[1] "SSR 96-5p emphasizes to the adjudicator the importance of making 'every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us.'" *Ferari v. Astrue,* CIV.A. 1:07-CV-01287, 2008 WL 2682507 at *6 (M.D. Pa. July 1, 2008) (Kane, C.J.).

Here, the ALJ rejected Dr. Manganiello's opinion because it did "not address any specific functional limitations and is quite conclusive without offering any specificity concerning the degree of the claimant's impairments" and the

---

[1] "Social Security Rulings…are binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b).

Employability Assessment Form does "require the doctors to justify their opinions through objective medical findings, diagnostic test results or other competent evidence. Finally, as with all opinions rendered as to a claimant's status as "disabled", this issue is clearly reserved to the Commissioner (Social Security Ruling 96-5p)." (Tr. 189). In other words, the ALJ rejected the opinion because it was an "opinion[] on issues reserved to the Commissioner and the bases for such opinions was not clear to" the ALJ. SSR 96-5p. There is no indication the ALJ made any effort, much less every reasonable effort, to recontact Dr. Manganiello. Thus, the ALJ was not entitled to rely on the conclusory nature and lack of support to reject Dr. Manganiello's opinion. SSR 96-5p.

The ALJ also cited Dr. Manganiello "altruistic" and financial interest to reject his opinion. However, this also constitutes rejecting evidence for the "wrong reason:

> The assertion by the administrative law judge that Dr. Teribury had an "altruistic and financial interest" in aiding Shedden is pure speculation and is not supported by any evidence in the record. There is no evidence in the record that Dr. Teribury based his opinion regarding Shedden's inability to engage in any gainful work on anything other than his best professional judgment. It was inappropriate for the administrative law judge to engage in this type of rationalization. If allowed to stand, an administrative law judge could reject treating physicians' opinions in every case and nullify the principles set forth by the Court of Appeals for the Third Circuit in *Morales, supra.*

*Shedden v. Astrue*, 4:10-CV-2515, 2012 WL 760632, at *10 (M.D. Pa. Mar. 7, 2012).

Thus, the ALJ did not identify any proper reason to reject Dr. Manganiello's opinion. This violates the preference for treating source opinions and the requirement in the Regulations to provide "good reasons" in the determination of transmittal for rejecting treating opinions. 20 C.F.R. 404.1527(c)(2). The Court recommends remand for the ALJ to properly evaluate the medical opinion evidence.

## B. Credibility Assessment

Plaintiff asserts that the ALJ erred in evaluating her credibility and failed to include all of her credibly established limitations, specifically her need to take three to six restroom breaks, in the RFC assessment.

When making a credibility finding, "the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)…that could reasonably be expected to produce the individual's pain or other symptoms." SSR 96-7P. Then:

> [T]he adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7P; *See also* 20 C.F.R. § 416.929. "Under this evaluation, a variety of factors are considered, such as: (1) 'objective medical evidence,' (2) 'daily activities,' (3) 'location, duration, frequency and intensity,' (4) medication prescribed, including its effectiveness and side effects, (5) treatment, and (6) other measures to relieve pain." *Daniello v. Colvin*, CIV. 12-1023-GMS-MPT, 2013 WL 2405442 (D. Del. June 3, 2013) (citing   20 C.F.R. § 404.1529(c)). The Third Circuit has held that:

> An ALJ must give serious consideration to a claimant's subjective complaints of pain, even where those complaints are not supported by objective evidence. *Ferguson v. Schweiker,* 765 F.2d 31, 37 (3d Cir.1985). "While there must be objective evidence of some condition that could reasonably produce pain, there need not be objective evidence of the pain itself." *Green,* 749 F.2d at 1071. Where medical evidence does support a claimant's complaints of pain, the complaints should then be given "great weight" and may not be disregarded unless there exists contrary medical evidence. *Carter,* 834 F.2d at 65; *Ferguson,* 765 F.2d at 37.

*Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir. 1993). The Regulations provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work…solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c). *See Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984); *Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir. 1993); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985). With regard to a claimant's treatment, "the adjudicator must not draw any inferences about an

individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p.

Here, the ALJ rejected Plaintiff's subjective claims because objective evidence failed to support her claims, she was noncompliant, and Dr. Citti's opinion contradicted her claims. (Tr. 180-91).

However, as discussed above, the ALJ erred in weighing the opinion evidence. Thus, the ALJ erred in relying on Dr. Citti's opinion to reject Plaintiff's credibility.   Moreover, Dr. Citti's opinion does not address the need to take frequent bathroom breaks, and therefore does not contradict Plaintiff's testimony in this regard. (Tr. 816-25). With regard to Plaintiff's noncompliance, the ALJ failed to address Plaintiff's explanation for noncompliance. SSR 96-7p. Thus, the ALJ was not entitled to rely on her noncompliance to reject her credibility. This leaves only a lack of objective evidence as a basis for the ALJ's credibility assessment. However, the Regulations specifically provide that a lack of objective evidence, alone, is insufficient to reject credibility. 20 C.F.R. § 416.929(c).

Although an ALJ's credibility assessment is entitled to deference, the ALJ may not reject Plaintiff's credibility for the "wrong reasons." *Mason v. Shalala*,

994 F.2d 1058, 1066 (3d Cir.1993). Here, the ALJ's flawed assessment of Dr. Manganiello's opinion and failure to discuss Plaintiff's claimed explanations for her noncompliance mean that he rejected her credibility for the wrong reasons. *Id.* On remand, the ALJ will not be required to credit Plaintiff's subjective complaints, but must give them serious consideration and, if rejected, provide legitimate reasons. Because the Court recommends remand on these grounds, the Court declines to address Plaintiff's other allegations of error.

### VII.    Conclusion

The undersigned recommends that the Court vacate the decision of the Commissioner pursuant to 42 U.S.C. § 405(g) and remand the case for further proceedings.

Accordingly, it is HEREBY RECOMMENDED:

1.    The decision of the Commissioner of Social Security denying Plaintiff's social security disability insurance and supplemental security income benefits be vacated and the case remanded to the Commissioner of Social Security to develop the record fully, conduct a new administrative hearing and appropriately evaluate the evidence.

2.    The Clerk of Court close this case.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a Magistrate Judge's proposed findings, recommendations or report addressing a motion or matter described in 28

U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A Judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The Judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.


Dated: March 27, 2015                   _____s/Gerald B. Cohn_____
                                                        GERALD B. COHN
                                              UNITED STATES MAGISTRATE JUDGE